IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CECIL WAYNE PROCTOR                                                                PLAINTIFF

v.                                    Case No. 4:18-cv-4029

STEVEN KING and CHELSEY
FOSTER                                                                            DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants Steven King and Chelsey Foster's Motion for Summary Judgment. (ECF No. 20). Plaintiff Cecil Wayne Proctor has filed a response. (ECF No. 29). Defendants have not filed a reply and their time to do so has passed. *See* Local Rule 7.2(b). The Court finds the matter ripe for consideration.

### I. BACKGROUND

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is currently incarcerated in the Arkansas Department of Correction, North Central Unit in Calico Rock, Arkansas. However, the allegations in Plaintiff's Complaint concern matters that occurred while he was incarcerated in the Miller County Detention Center in Texarkana, Arkansas. (ECF No. 1). Plaintiff asserts two claims of deliberate indifference in relation to two alleged incidents: one occurring in November 2017 when Plaintiff allegedly received an inappropriate dosage of blood pressure medication, and the other occurring in January 2018 when Defendants allegedly failed to give him adequate medical care related to his scrotum. (ECF No. 1). Plaintiff proceeds against Defendants in both their individual and official capacities. Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was booked into the Miller County Detention Center on November 14, 2017. The initial physician's order dated November 14, 2017, continued Plaintiff's then-current medications, including "Aspirin 81mg PO QD; Amlodipine 10 mg PO QD; Famotidine 20 mg PO BID; Lisinopril 20 mg PO QD; and Sulfatrim DS po x 9 days."[1] (ECF No. 22-3 at 4).

On November 15, 2017, during a routine check, Plaintiff's blood pressure was noted as 80/64. (ECF Nos. 22-2; 22-3 at 3, 5). Following the blood pressure check, Nurse Practitioner Steven Foltz ("Nurse Practitioner Foltz")[2] ordered the Amlodipine 10 mg to be held until further notice. (ECF Nos. 22-2; 22-3 at 4). Plaintiff's blood pressure was checked two more times on November 15, 2017, and the readings were 90/70 at 7:00 p.m. and 100/72 at 10:30 p.m. (ECF Nos. 22-2; 22-3 at 5).

On November 16, 2017, Plaintiff was administered Lisinopril 20 mg at 8:00 a.m. as prescribed. His blood pressure reading was 108/72 at 8:45 a.m. (ECF Nos. 22-2; 22-3 at 5). On the morning of November 17, 2017, Plaintiff was administered Lisinopril 20 mg as prescribed. (ECF No. 22-2). Later that morning, Plaintiff was admitted to Wadley Regional Medical Center for syncope[3] and collapse. On November 18, 2017, Plaintiff was discharged with a diagnosis of hypotension. (ECF Nos. 22-2 at 2; 22-3 at 6).

Plaintiff's medical records reflect that all medications were administered as prescribed from November 15, 2017, through November 18, 2017. (ECF No. 22-3 at 12-15). Plaintiff's medical records further reflect that Defendant King administered Plaintiff's Lisinopril on the mornings of November 15-17, 2018. (ECF No. 22-3 at 13). Defendant King did not have authority

---

[1] Amlodipine and Lisinopril are blood pressure medications. (ECF No. 22-2 at 1).

[2] Nurse Practitioner Foltz is not a defendant in this case.

[3] Syncope is the sudden loss of consciousness, or fainting. (ECF No. 22-2 at 2).

to change Plaintiff's prescription orders and could not direct that blood pressure medications be started or stopped. (ECF No. 22-2 at 2).

On January 24, 2018, Plaintiff submitted a medical request to be seen at sick call for an irritated scrotum. (ECF No. 22-3 at 23). Plaintiff was seen by Defendant Foster at nurse call on January 24, 2018, at approximately 8:27 p.m. (ECF Nos. 22-1; 22-3 at 23). Defendant Foster noted in Plaintiff's medical chart that Plaintiff said his scrotum was irritated, but that she did not see anything. Plaintiff states that he told Defendant Foster that he thought he had been bitten. (ECF No. 1 at 4). Plaintiff states that he also told Defendant Foster that he had a hole in the bottom of his scrotum and that it "was bleeding with pus coming out." (ECF No. 1 at 5). Defendant Foster placed Plaintiff on the doctor list to be seen by other medical staff. Plaintiff's medical records further note that Plaintiff told Defendant Foster that he previously had surgery on his scrotum on December 12, 2016, due to an infection. (ECF No. 22-3 at 23).

At some unspecified time on January 25, 2018, and January 26, 2018, Plaintiff asked Defendant King to send him to the emergency room for treatment of his scrotal wound. Defendant King knew that Plaintiff was scheduled to see Nurse Practitioner Foltz on January 26, 2018 for the same issue, so he deferred treatment to Nurse Practitioner Foltz and did not send Plaintiff to the emergency room. (ECF No. 22-2 at 2).

On January 26, 2018, Plaintiff was seen at doctor's call by Nurse Practitioner Foltz. (ECF Nos. 22-3 at 27; 29-1 at 64). At that time, Nurse Practitioner Foltz noted an abscess on Plaintiff's scrotum and sent him to the emergency room for evaluation. (ECF No. 22-3 at 27). That same day, Plaintiff was admitted to Wadley Hospital with an admitting diagnosis of scrotal cellulitis/scrotal abscess. (ECF No. 23-3 at 28). A procedure was performed which involved incision and drainage of the scrotal abscess. (ECF No. 23-3 at 29).

3

Plaintiff was discharged on January 29, 2018, with instructions to keep his incision dry. (ECF No. 23-3 at 28). Plaintiff was proscribed clindamycin HCI 300 mg, three times a day for eight days. Plaintiff was further instructed to flush the scrotal wound with 50 cc of hydrogen peroxide, rinse with 50 – 100 cc of sterile water, and apply Neosporin antibiotic ointment and redress daily until the cavity closed. (ECF No. 23-3 at 33-36). Plaintiff submitted a medical request on January 30, 2018, asking for "medicated cream for wound after shower." He was seen by Defendant Foster following his request. (ECF No. 23-3 at 37).

At all times relevant, both Defendant King and Defendant Foster were employees of Southern Health Partners, Inc. At all times relevant, Southern Health Partners, Inc. was under contract with Miller County, Arkansas, to provide healthcare services to inmates housed at the Miller County Detention Center. (ECF Nos. 22-1; 22-2). As nurses, neither Defendant Foster nor Defendant King could prescribe antibiotics or other any other medications. (ECF Nos. 22-1 at 2; 22-2 at 2).

On September 14, 2018, Defendants filed the instant motion for summary judgment, arguing that they are entitled to summary judgment on Plaintiff's claims. Plaintiff opposes the motion.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

4

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants contend they are entitled to summary judgment on Plaintiff's claims of deliberate indifference. The Court will separately address Defendants' arguments with respect to Plaintiff's individual capacity and official capacity claims.

**A. Individual Capacity Claims**

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: '[Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"

5

*Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). Intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle*, 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotation marks omitted). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are questions of fact. *Schaub*, 638 F.3d at 914 (citing *Coleman v.*

6

*Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)).

With that framework in mind, the Court now turns to Plaintiff's deliberate indifference claims. Plaintiff asserts these claims in relation to two alleged incidents, one occurring in November 2017, and the other occurring in January 2018. The Court will separately address the two incidents.

### 1. November 2017

Plaintiff asserts that, in November 2017, Defendants were deliberately indifferent to his medical care with respect to his blood pressure, resulting in his admission into the hospital for syncope and collapse and ultimate diagnosis of hypotension.[4] Specifically, Plaintiff's claim in this regard is against Defendant King. Plaintiff states that he suspects that Defendant King possibly over medicated him by accidentally doubling his medication dosage.

The medical records reflect that Plaintiff was given his blood pressure medications as prescribed at all times relevant. Further, it is undisputed that as a nurse, Defendant King could not order that blood pressure medications be started or stopped. Plaintiff's suggestion of possible overmedication has no evidentiary support.

Even assuming *arguendo* that evidence existed in the record showing that Defendant King accidentally doubled Plaintiff's medication dosage, Plaintiff's claim would not survive summary judgment because he "must show more than negligence, more even than gross negligence," *Popoalii*, 512 F.3d at 499, and that Defendant King "actually knew of but deliberately disregarded [Plaintiff's] serious medical need." *Gordon*, 454 F.3d 862. Hypothetical evidence showing that Defendant King accidentally gave Plaintiff the wrong medication dosage would be evidence only

---

[4] The Court notes that Plaintiff made a nearly identical claim against Defendant King in a prior, separate lawsuit filed with the Court. *See Proctor v. Foltz*, Case No. 4:18-cv-4015 (W.D. Ark. Jan. 31, 2018), ECF No. 1. On January 8, 2019, the Court granted summary judgment in favor of Defendant King in that other case and dismissed Plaintiff's similar claim with prejudice.

of negligence and not suffice to show that Defendant King was deliberately indifferent to Plaintiff's serious medical need. *See McClain v. Howard*, No. 5:13-cv-5269-ELS, 2015 WL 6123063, at *9 (W.D. Ark. Sept. 21, 2015) (finding that giving an inmate the wrong medication on occasion establishes only negligence, not deliberate indifference), *report and recommendation adopted*, No. 5:13-cv-5269-PKH, 2015 WL 6125914 (W.D. Ark. Oct. 16, 2015).

Accordingly, the Court finds that Defendants are entitled to summary judgment with respect to Plaintiff's individual capacity deliberate indifference claim against Defendant King concerning the alleged incident in November 2017.

### 2. January 2018

The facts surrounding Plaintiff's second claim begins with a medical request Plaintiff submitted on January 24, 2018, requesting to be seen for an irritated scrotum. Plaintiff was seen at nurse call on January 24, 2018, at approximately 8:27 p.m., by Defendant Foster. It is undisputed that Defendant Foster briefly observed Plaintiff's scrotum. Plaintiff's medical records reflect that Defendant Foster "didn't see anything." However, Defendant Foster put Plaintiff on the doctor list for further evaluation by other medical staff.

Plaintiff maintains that there was blood and pus coming from his scrotum that Defendant Foster should have seen. Plaintiff also asserts that Defendant King refused to send him to the emergency room on January 25 and January 26, 2018.

Plaintiff was evaluated on the morning of January 26, 2018, by Nurse Practitioner Foltz, who noted an abscess on Plaintiff's scrotum and sent him to the emergency room. Plaintiff was admitted to Wadley Hospital on January 26, 2018, at 12:05 p.m., with an admitting diagnosis of scrotal cellulitis/scrotal abscess. A procedure was performed due to the abscess, involving an incision and drainage of the scrotal abscess. Plaintiff was discharged on January 29, 2018, with

instructions on wound care. On January 30, 2018, Plaintiff submitted a medical request for the prescribed medicated cream for his wound. Plaintiff was then seen by Defendant Foster. Plaintiff asserts that he was told by the doctor at the hospital that if Defendants had prescribed antibiotics, the abscess would not have needed to be drained.

Plaintiff has not set forth a valid claim against Defendants with respect to the treatment he received in January 2018. Defendant Foster observed Plaintiff's condition on the evening of January 24, 2018, and then placed Plaintiff on the doctor list. Plaintiff was seen by a nurse practitioner at doctor call on the morning of January 26, 2018. Although, as set forth above, a delay in medical treatment can constitute deliberate indifference, any delay in this case was minimal and Plaintiff's bare allegations that his medical condition worsened because Defendants did not send him to the emergency room on January 24-25, 2018, are not supported by evidence. *Laughlin*, 430 F.3d at 929. Notably, Plaintiff submits no verifying medical evidence supporting his bare assertion that a doctor told him that the minor delay in treatment negatively affected his medical condition. Moreover, even assuming *arguendo* that a doctor told Plaintiff that his abscess would not have needed to be drained if Plaintiff had been given antibiotics, it is undisputed that, as nurses, neither Defendant Foster nor Defendant King could prescribe antibiotics or other any other medications. (ECF Nos. 22-1 at 2; 22-2 at 2). Thus, the record does not support a finding that Defendants "actually knew of but deliberately disregarded [Plaintiff's] serious medical need." *Gordon*, 454 F.3d 862.

Accordingly, the Court finds that Defendants are entitled to summary judgment with respect to Plaintiff's individual capacity deliberate indifference claim concerning the incident in January 2018.

### B. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. When a government contracts with a third party to fulfill a constitutional duty—such as providing medical care—official capacity claims against the third party's employees are treated as claims against the third party itself. *See Cannady v. Cradduck*, No. 5:16-cv-5039-TLB, 2016 WL 4432704, *1-2 (W.D. Ark. Aug. 18, 2016) (finding that official capacity claims against employees of a third party medical provider are treated as claims against the company because the county contracted with the company to provide healthcare to county prisoners). Thus, Plaintiff's official capacity claims are essentially a claim against Defendants' employer, Southern Health Partners, Inc.

To sustain an official capacity claim against that entity, Plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (discussing a section 1983 claim against a prison medical provider); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) ("[A] corporation acting under color of state law will only be held liable under section 1983 for its own unconstitutional policies."). Thus, Plaintiff's official capacity claims are "functionally equivalent" to alleging that Defendants' employer, Southern Health Partners, Inc., had "a policy, custom, or [took an] official action" that deprived him of constitutionally adequate medical care. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1275 (8th Cir. 2010); *Johnson*, 452 F.3d at 973.

Although Plaintiff asserts that "[t]he Miller County Correctional Facility has been unconstitutionally violating inmates rights for years" and that he's "witnessed inmates being given wrong doses of medications and treatments," Plaintiff's allegations are bare and he has failed to allege sufficient facts or provide evidence of any policy, custom, or practice of Southern Health Partners, Inc. that contributed to the alleged violation of *his* constitutional rights. Accordingly, the

Court finds that Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claims against them in their official capacity.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Defendants Steven King and Chelsey Foster's Motion for Summary Judgment (ECF No. 20) should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**. A judgment of even date consistent with this opinion shall issue.

**IT IS SO ORDERED**, this 10th day of January, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge